```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

GULF COAST ENVIRONMENTAL        §
SYSTEMS, LLC,                   §
                                §
     Plaintiff,                 §
                                §       CIVIL ACTION NO. H-08-1080
v.                              §
                                §
TKS CONTROL SYSTEMS, INC.,      §
                                §
     Defendant.                 §
```

MEMORANDUM AND ORDER

Now pending is Plaintiff Gulf Coast Environmental Systems, LLC's Motion to Remand and Dismiss for Improper Venue, and for Sanctions under 28 U.S.C. § 1447(c) and Fed. R. Civ. P. 11 (Document No. 5). After carefully considering the motion, response, reply, sur-reply, and the applicable law, the Court concludes as follows.

I.  Background

This is a breach of contract dispute. Plaintiff Gulf Coast Environmental Systems, LLC ("Plaintiff"), an environmental engineering and manufacturing service company, is registered in and has its principal place of business in Texas. Document No. 1 at 1, ex. 1 20 ¶ 5. Defendant TKS Control Systems, Inc. ("Defendant"), a corporation incorporated in and with its principal place of business in Illinois, allegedly performed subcontract

work for Plaintiff for several years.  Document No. 1 at 2, ex. 1 at 20 ¶ 5.

On December 26, 2007, Plaintiff issued to Defendant a purchase order in the amount of $25,236.04 for "[a]ll materials, tools, and labor required to update and refurbish the GCE 3-can RTO," a common oxidizer.  Document No. 1 ex. 1 at 20 ¶ 6; Document No. 6 ex. A ¶ 5, ex. B.  Printed at the bottom of the purchase order is a reference to Plaintiff's website, www.gcesystems.com, and the notation, "Refer to Website for Terms and Conditions of Purchase." Document No. 6 ex. B.  The standard terms and conditions disclosed on Plaintiff's website includes a provision stating that "Seller shall be paid, upon submission of proper invoices, the prices stipulated herein for goods delivered and accepted . . . ." Document No. 5 ex. 1-B § 23.  In an email dated January 8, 2008, Plaintiff agreed to pay Defendant an additional $1,712.00 for parts, plus shipping and labor costs.  Document No. 8 ex. 2.

In March, 2008, Defendant refused to deliver the GCE 3-can RTO to Plaintiff's customer until Plaintiff paid cash in advance for all goods and services provided by Defendant.  Document No. 1 ex. 1 at 20 ¶ 7; Document No. 8 ex. A ¶ 11.  Plaintiff's customer originally agreed to pay $62,880 to Plaintiff for the equipment. Document No. 8 ex. 3 ¶ 2.  According to Defendant's owner, Tim Neal, the GCE 3-can RTO "has a value in excess of $75,000." Document No. 6 ex. A ¶ 5.

2

On March 10, 2008, after the date scheduled for delivery of the equipment to its customer had passed, Plaintiff filed suit in state court for breach of contract, contending that Defendant's refusal to deliver the GCE 3-can RTO prior to receipt of payment contravenes the terms and conditions disclosed on Plaintiff's website, as incorporated by reference in the December 26, 2007 purchase order.  Document No. 1 at 21 ¶¶ 10, 11.  The Original Petition states that Plaintiff's damages, "exclusive of interest and costs, amount to less than $75,000 at this time."  Id. at 22 ¶ 13.  Those damages allegedly include, but are not limited to "loss of [Plaintiff's] expectancy interest in the Purchase Order, including incidental damages, consequential damages, lost profits, the cost of delay in performance, and the cost of mitigation."  Id. at 21 ¶ 13.  The Original Petition also invokes Level 2 discovery under Tex. R. Civ. P. 190.3 and includes a request for attorney's fees.  Id. at 20 ¶ 1, 22 ¶ 14.

Defendant removed to this Court on April 9, 2008 on the basis of diversity jurisdiction.  Document No. 1 at 1.  Plaintiff now moves to remand, asserting, *inter alia*, that Defendant has failed to meet its burden of rebutting Plaintiff's express allegation of damages below the jurisdictional minimum, and requesting sanctions consisting of attorney's fees pursuant to 28 U.S.C. § 1447(c) or Fed. R. Civ. P. 11.  Document No. 5 at 4-8.

## II. Standard of Review

A defendant may remove to federal court a civil action over which the federal court has diversity jurisdiction. 28 U.S.C. §§ 1332(a), 1441(b). Federal district courts have diversity jurisdiction over civil actions in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States. . . ." § 1332(a). When a plaintiff moves to remand for lack of jurisdiction, the burden of establishing jurisdiction rests upon the defendant. Miller v. Diamond Shamrock Co., 275 F.3d 414, 417 (5th Cir. 2001); Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365 (5th Cir. 1995). Any doubt as to the propriety of the removal must be resolved in favor of remand. *See* Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).

"When the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $[75],000." Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995)(quoting De Aguilar v. Boeing ("De Aguilar I"), 11 F.3d 55, 58 (5th Cir. 1993)). This may be accomplished in either of two ways: "(1) by demonstrating that it is 'facially apparent' from the petition that the claim likely exceeds $75,000 or (2) 'by setting forth *the facts* in controversy--preferably in

4

the removal petition, but sometimes by affidavit--that support a finding of the requisite amount.'"  Grant v. Chevron Phillips Chem. Co., 309 F.3d 864, 868 & n.10 (5th Cir. 2002) (quoting Allen, 63 F.3d at 1335).  If the defendant meets its burden, the plaintiff may obtain remand by showing as a matter of law that "it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint." De Aguilar v. Boeing Co. ("De Aguilar II"), 47 F.3d 1404, 1411 (5th Cir. 1995).

### III.  Discussion

Defendant asserts diversity jurisdiction as the basis for removal, based in part on Defendant's status as an Illinois corporation with its principal place of business in Illinois, and Plaintiff's alleged Texas citizenship as a "Texas Limited Liability Company with its principal place of business located in Montgomery County, Texas."  Document No. 1 at 1.  However, according to all circuits that have addressed the issue, the citizenship of a limited liability company such as Plaintiff turns on the citizenship of all its members. *See, e.g.*, Wise v. Wachovia Secs., LLC, 450 F.3d 265, 267 (7th Cir.), *cert. denied*, 127 S. Ct. (2006) ("The citizenship for diversity purposes of a limited liability company, however, despite the resemblance of such a company to a corporation (the hallmark of both being limited liability), is the citizenship of each of its members."); Johnson v. Columbia Props.

5

Anchorage, L.P., 437 F.3d 894, 899 (9th Cir. 2006) ("We therefore join our sister circuits and hold that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens."); Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54-55 (1st Cir. 2006) (same); Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 120 (4th Cir. 2004) (same); Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) (same); GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 829 (8th Cir. 2004) (same); Homfeld II, L.L.C. v. Comair Holdings, Inc., 53 F. App'x 731, 732 (6th Cir. 2002) (unpublished opinion); Handelsman v. Bedford Village Assocs. L.P., 213 F.3d 48, 51-52 (2d Cir. 2000) (same). The jurisdictional allegations regarding Plaintiff's citizenship, insofar as they mistakenly rely on the test for corporate citizenship and fail to disclose the citizenship of Plaintiff's members, are therefore insufficient to establish the existence of complete diversity between the parties.

However, even assuming that Plaintiff's members are citizens of states other than Illinois such that the parties are diverse, Plaintiff contends that Defendant cannot satisfy its burden of demonstrating that the amount in controversy as pled in the Original Petition meets the requisite minimum of $75,000. Document No. 5 at 5-6. Here, the Original Petition specifically contends that Plaintiff's "damages, exclusive of interest and costs, amount

to less than $75,000 at this time." Document No. 1 ex. 1 at 21 ¶ 13. Texas, like many other states, prohibits plaintiffs from pleading for specific amounts of unliquidated damages. *See* TEX. R. CIV. P. 47(b); De Aguilar II, 47 F.3d at 1410, 1412-13. Nonetheless, such a claim of damages below the requisite threshold "remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount." De Aguilar II, 47 F.3d at 1411; *see also* Allen, 63 F.3d at 1335 & n.14 (summarizing De Aguilar II).

Defendant argues that the damages sought by Plaintiff exceeded $100,000 as of the date of removal, because: (1) Plaintiff's election of a Level 2 discovery plan allegedly served as "clear notice to all parties" that Plaintiff had incurred damages of at least $50,000 when suit was filed, Document No. 6 at 6; (2) these asserted damages "could only come from the value of the equipment," which, according to the affidavit of Defendant's owner, exceeds $75,000, id. at 7; and (3) Plaintiff additionally seeks consequential damages, incidental damages, and attorney's fees, id. at 7-8. The first of these contentions is based on Texas procedural rules requiring that every case be governed by one of three discovery control plans, each of which prescribes the length of the discovery period, total time for depositions, and number of interrogatories. TEX. R. CIV. P. 190.1, 190.2, 190.3 & 190.4. If

7

a plaintiff "affirmatively plead[s]" that its aggregate damages do not exceed $50,000, discovery under Level 1 applies. Id. 190.2(a). But, as the comment to the rule explains, "[i]f a plaintiff does not or cannot plead the case in compliance with Rule 190.2(a) so as to invoke the application of Level 1, the case is *automatically* in Level 2." Id. 190 cmt. 1 (emphasis added). Thus, Level 2 discovery serves as the default plan when no affirmative allegation of damages equal to or less than $50,000 is made. Plaintiff's election *not* to include such an affirmative allegation, thereby triggering the default classification of its case as Level 2, does not necessarily imply that its damages are actually equal to or greater than $50,000, as Defendant presumes.

Also erroneous is Defendant's contention that Plaintiff's damages necessarily equal or exceed the value of the machinery that Defendant failed to deliver, which, according to the affidavit of Defendant's owner, is more than $75,000.[1] Document No. 9 at 1. Whether under the UCC or common law, "contract damages are intended place the victim of the breach in the same position he would have

---

[1] Defendant alternatively hypothesizes that Plaintiff could be entitled to specific performance, which claim would allegedly implicate the value of the undelivered equipment. Document No. 9 at 3-4. However, the Original Petition does not request specific performance, and Defendant's speculation regarding unasserted claims that might later be brought does not satisfy its burden of proving that the amount in controversy was satisfied at the time of removal. *See, e.g.*, Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000) (jurisdictional facts are assessed at the time of removal).

8

occupied had the breach not occurred." Reynolds Metals Co. v. Westinghouse Elec. Corp., 758 F.2d 1073, 1079 (5th Cir. 1985). Under the Texas version of the UCC, which both parties invoke as the governing law, a seller's failure to deliver goods entitles the buyer (1) to "cover" and recover damages equal to the difference in the contract price and that paid in good faith for a reasonable purchase of substitute goods; or (2) to recover the difference between the market price and contract price of the goods. *See* Tex. Bus. & Com. Code §§ 2.711, 2.712, 2.713; *see also* Mueller v. McGill, 870 S.W.2d 673, 675-76 (Tex. App.--Houston [1st Dist.] 1994, writ denied) (construing these provisions). Either way, the contract price that the buyer would have paid to the seller is deducted from the value--whether actual or market price--of substitute goods. Therefore, fundamental principles of contract law do not allow an injured buyer such as Plaintiff to recover the full value of undelivered goods as a component of its damages.

According to the purchase order submitted by Defendant, Plaintiff initially agreed to pay $25,236.04 for the equipment, including parts and labor. Document No. 6 ex. B. In an email exchange between the parties, Plaintiff agreed to increase that amount by at least $1,712.00 to account for additional work. Document No. 8 ex. 2. If Defendant had delivered the equipment pursuant to the parties' agreement, Plaintiff would have been obligated to pay the promised contract price of $26,948.04.

9

Assuming that the equipment is worth at least $75,000, as estimated by Defendant's owner, Tim Neal, *see* Document No. 6 ex. A ¶ 5, and further, that this estimate approximates the market price of the goods, Plaintiff's maximum expectation damages would equal $75,000 less $26,948.04, or $48,051.96--well below the minimum amount in controversy required for diversity jurisdiction.

Although this total does not include incidental or consequential damages, the amount of those damages is not facially apparent, and Defendant has submitted no evidence, as it must, substantiating the amount of those damages at the time of removal. *See, e.g.*, Gebbia, 233 F.3d at 882-83.  To the contrary, Defendant repeatedly and erroneously attempts to shift to Plaintiff the burden of proving that damages are *less* than $75,000.  *See, e.g.*, Document No. 9 at 3 (decrying Plaintiff's purported "refus[al] to clearly and completely detail for the Court what it believes the amount in controversy at the time of removal was"); id. at 4 (criticizing Plaintiff for offering no evidence regarding the value of the disputed equipment).

Defendant also asserts in its response that Plaintiff's claim for attorney's fees under Tex. Civ. Prac. & Rem. Code § 38.001 "will most likely exceed $25,000," Document No. 6 at 7, 8, and somewhat inconsistently in its sur-reply, that those fees "will exceed $15,000," Document No. 9 at 5.  The first of these estimates is wholly conclusory.  The latter figure is purportedly based on

10

Plaintiff's present request for $3,785 in fees associated with filing its motion to remand, from which Defendant infers that Plaintiff's fees associated with litigation on the merits would likely be greater.  However, the Court cannot reasonably conclude that the attorney's fees incurred by Plaintiff with respect to the jurisdictional issue demonstrate by a preponderance of the evidence that resolution of the merits would implicate a specific fee amount, much less an amount sufficient to increase the likely amount in controversy above the jurisdictional minimum.  Notably, it is apparent from the Original Petition and the parties' briefs that this straightforward contract dispute turns primarily on discrete questions of law regarding the terms of the parties' agreement, which should tend to minimize the amount of fees likely to be recovered.

Finally, Defendant relies on Plaintiff's failure to stipulate that its damages are less than $75,000 as proof that the damages in fact exceed that amount.  Document No. 6 at 9.  s"[A] failure to stipulate is only one factor to consider in determining whether a defendant has met its burden, and it alone will not defeat a plaintiff's motion to remand."  Welp v. Hanover Ins. Co., Civil Action No. 07-8859, 2008 WL 235348, at *3 (E.D. La. Jan. 28, 2008). Having found Defendant's arguments are without merit, and resolving all doubts in favor of remand, the Court concludes that Defendant has not met its burden of demonstrating by a preponderance of the

evidence that the amount in controversy exceeds $75,000. Plaintiff's motion to remand is therefore granted. Plaintiff's further request for attorney's fees pursuant to 28 U.S.C. § 1447(c), and as sanctions, is denied.

## IV. Order

For the foregoing reasons, it is

ORDERED that Plaintiff's Motion to Remand and Dismiss for Improper Venue, and for Sanctions under 28 U.S.C. § 1447(c) and Fed. R. Civ. P. 11 (Document No. 5) is GRANTED IN PART, and this case is REMANDED to the Montgomery County Court at Law No. 2, Montgomery County, Texas. Plaintiff's additional request for sanctions and attorney's fees is DENIED.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 7th day of July, 2008.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE